IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARL H. RUTH,
          Plaintiff,

                                    1:16-cv-0872-PK
                                      OPINION AND
                                      ORDER

v.


NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

          Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Carl H. Ruth filed this action on May 19, 2016, seeking judicial review of the

Commissioner of Social Security's final decision denying his application for disability insurance

benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the

Social Security Act (the "Act"). This court has jurisdiction over plaintiff's action pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to a Magistrate Judge in

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 9. I have considered all of the parties' briefing and the relevant evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, an ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation proceeds to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140–41; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer.

*See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153–54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85- 28, 1985 WL 56856).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§

404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p 1996 WL 374184.

At the fourth step, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to

meet his burden at the fifth step. *See id.*; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 1989) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

///

Born in January 1988 in Eureka, California, Ruth was 22 years old on the alleged onset date of February 28, 2010, and 26 years old at the time of the hearing. Tr. 104–05, 107, 121, 1077. Ruth is a high school graduate and worked part-time at a McDonald's and at a floral farm. On June 5, 2012, Ruth filed Title II and Title XVI applications for disability. Tr. 105–06. He alleged disability due to: attention deficit hyperactivity disorder, anger management, depression, comprehension issues, migraines/blackouts, chemical imbalance, hypoglycemia, and injury to both shoulders. Tr. 107, 121. After his applications were denied initially and upon reconsideration, Ruth requested a hearing before an administrative law judge ("ALJ"). Tr. 14, 107–20, 121–34.

## I.     Summary of The Medical Record

The earliest medical evidence in the administrative record cited by Ruth transpired nine years prior to the alleged onset date and consists of a psychological evaluation administered by school psychologist Jim Bierman, Ph.D., in January 2001. Tr. 420–26 In the Summary and Recommendations section of the evaluation, Dr. Bierman noted Ruth's "cognitive functioning [was] in the Borderline range" and that he had "marked difficulty with perceptual organization." Tr. 425. In regard to his emotional and personality development, Dr. Bierman noted that Ruth presented as "an oppositional-defiant adolescent," and he "had recently experienced multiple changes in residence and one brief hospitalization for danger to himself." Tr. 425. Dr. Bierman

---

[1] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record, and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 18. The record before the Court constitutes more than 1,100 pages, with some duplicative documents. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

recommended "individual psychotherapy using behavioral modification geared towards increasing restraint and self-control . . . ." Tr. 425. Additionally, Dr. Bierman observed Ruth presented a "low risk" of danger to himself and others. Tr. 425. Dr. Bierman diagnosed Ruth with oppositional defiant disorder, posttraumatic stress disorder, physical abuse of a child, borderline intellectual functioning, aggressive/sadistic and antisocial personality traits with negativistic features, and current global assessment ("GAF") score of 36, with a high of 50 in the past year.[2] Tr. 426.

In May 2004, Michael Ramirez Psy.D., administered a psychological evaluation of Ruth. Tr. 696–704. In the Summary and Recommendations section of the evaluation, Dr. Ramirez noted Ruth "endorsed high levels of depressive and anxious cognitions as well as antisocial behavior." Tr. 702. Regarding Ruth's mental status, Dr. Ramirez noted his memory "both immediate and remote, was intact," his "general fund knowledge seemed appropriate for his educational background," his "intellect appeared to be average," his "insight and judgement appeared competent," and his "concentration was within normal limits." Tr. 699. Dr. Ramirez noted that Ruth "admit[ted] displaying inappropriate social behavior" and "report[ed a]

---

[2] While relevant, a "GAF score does not determine disability." *Davis v. Astrue,* 2012 WL 4005553, at *9 (D. Or. June 12), adopted by 2012 WL 3614310 (D. Or. Aug. 21, 2012) (internal citation omitted). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). According to the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), "a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.' A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." *Garrison v. Colvin,* 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (quoting DSM-IV); *but see Skelton v. Comm'r of Soc. Sec.,* 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice").

willingness to participate in treatment." Tr. 703. Dr. Ramirez diagnosed Ruth with conduct disorder, cannabis abuse, and mood disorder, and a current GAF score of 50, with a high of 60 in the past year.

In November 2006, Ruth reported "mental distress" to registered nurse ("RN") J. Spini, and reported continued difficulty "with interpersonal relationships, irritability/anger, impulse control, insomnia, concentration/memory, mania, mood [liability], energy level, depression, and anxiety/fear/panic." Tr. 883. Ruth's Abilify prescription was continued and he was instructed to follow up in six weeks. Tr. 883.

In January 2007, on a check-box form, a medical provider reported Ruth's thought contents and processes appeared goal directed, circumstantial, and tangential.[3] Tr. 879. His insight and judgment were assessed as poor. *Id.* Ruth's cognition was assessed as concrete and his memory appeared grossly intact. He was diagnosed with GAF score of 46, with a high of 50 in the last year.

In March 2009, P. Anderson administered an assessment of Ruth based on self-reports. Tr. 1042–47. His mental status revealed he was oriented, his rapport was appropriate, his mood was irritable, his affect was expansive, and his speech was coherent as well as tangential. Tr. 1044. His thought content and processes were appropriate; his insight was assessed as poor and his judgment as fair. As to Ruth's cognitive functioning, he was easily distracted and suffered from a concentration problem. Tr. 1045. He was assessed as not posing a risk of harm to himself or others. *Id.* Ruth presented "as being guarded concerning personal information, yet amenable during the interview once he began talking about his interests." Tr. 1046. Anderson

---

[3] The Court is unable to identify the medical provider who completed and signed the check-box form or the treating relationship he/she had with Ruth.

observed that Ruth's "most evident barrier to a functional life is his impulsive anger and rage." *Id.* Anderson diagnosed depressive disorder, attention deficit hyperactivity disorder, anxiety disorder due to a substance, and a GAF score of 41, with a high of 43 in the last year. Tr. 1046.

In April 2009, Ruth reported impulsivity, problems with anger, and compulsive behavior. Tr. 1025, 1037.

In January 2010, a medical provider reported Ruth's thought contents and processes appeared appropriate and goal directed.[4] Tr. 976. His insight and judgment were assessed as fair. *Id.* He was assessed as having no gross cognitive deficits and his memory appeared grossly intact. *Id.* He was diagnosed with GAF score of 50, with a high of 55 in the last year. Tr. 977.

In May 2011, Ruth was referred to Thomas Shields, Ph.D., for a psychodiagnostic evaluation. Tr. 1082–87. Dr. Shields noted Ruth was "fairly guarded and [had] a negative attitude during the evaluation." Tr. 1085. Dr. Shields noted an "increase in fidgetiness and distractibility whenever [he and Ruth] talk[ed] about those topics." Tr. 1085, 1087. Dr. Shields noted Ruth was "alert but distracted." Tr. 1086. Dr. Shields wrote in his comment section:

> It's unclear how severe his attention problem is, however, due to the impression management observed during this evaluation and possible suboptimal effort on the digit span task. I did observe a mildly slowed rate of speech and mildly slowed thought processing in casual interaction, suggesting an impairment in processing speed. For this reason, he may very well exhibit mild impairment in keeping a normal pace at the work place. He was capable of understanding, remembering, and carrying out simple instructions.
> ***
> His social functioning is likely moderately impaired. He was able to hold a job for three years but lost the job when he hit his boss with a door. He is fairly arrogant and self-absorbed, claims to enjoy when

---

[4] The Court notes that it is again unable to identify the medical provider who completed and signed form; however, it appears from the context the form was signed by medical doctor.

> others are in pain, and imagines himself to be a superior street
> fighter. He is disinterested in formal martial arts because there are
> "rules[.]"
> ***
> His persistence was mildly impaired during this evaluation
> predominantly because of motivational factors. Finally, there is
> some suspicion that he may not be entirely forthcoming about his
> cannabis use history.

Tr. 1087. Dr. Shields diagnosed Ruth with attention deficit hyperactivity disorder, mood disorder, cannabis abuse, and personality disorder. *Id.*

In September 2012, Dr. Shields conducted an additional psychodiagnostic evaluation of Ruth.[5] Dr. Shields observed that Ruth appeared "mildly dysphoric"; however, he presented with an appropriate affect and was fully oriented. Tr. 1078. Ruth's presentation was "consistent with that of an individual with [attention deficit hyperactivity disorder]." Tr. 1080. Dr. Shields found it "difficult to discern the nature of [Ruth's] attentional difficulties [due to] his suboptimal effort during the mental status examination and his chronic use of cannabis." *Id.* Dr. Shields wrote in his comment section:

> [Ruth was] capable of understanding, remembering, and carrying
> out short and simple instructions. His ability to sustain
> concentration on tasks over extended periods of time is expected to
> be moderately impaired secondary to the combined impact of his
> [attention deficit hyperactivity disorder] and his typical state of
> cannabis intoxication.
> ***
> His social functioning appears mild-to-moderately impaired based
> on his negative attitude, unsophisticated manner of impression
> management, probable proclivity toward being manipulative, and
> other anti-social traits. Persistence and pace are expected to be
> moderate-to-severely impaired secondary to maladaptive
> personality features, cannabis dependence, intermittent binge
> drinking, [attention deficit hyperactivity disorder], and anger

---

[5] Ruth was originally scheduled to have the evaluation completed in August 2012. However, the evaluation was rescheduled to September because Ruth arrived at the August appointment under the influence of cannabis. Tr. 1076.

management issues.

*Id.* Dr. Shields diagnosed Ruth with chronic cannabis dependence, alcohol dependence in early partial remission, pain disorder associated with both psychological factors and general medical conditions, and personality disorder with antisocial traits. *Id.*

In November 2012, police brought Ruth in for a mental health evaluation after he called a crisis line. Tr. 1118–19. David Procknow, M.D., wrote Ruth "[a]pparently [had] taken a credit card to his left wrist and was trying to harm himself." Tr. 1119. During his mental health evaluation, Ruth denied any plan or intent to harm himself and denied that he was a risk of harm to others or property. Tr. 1156. Qualified mental health professional ("QMHP"), Lacey Sallotte, M.S., diagnosed depressive disorder, attention deficit hyperactivity disorder, cannabis dependence, and a GAF score of 47.[6] Tr. 1158.

In August 2013, Ruth presented with complaints of shoulder, neck, arm, and leg pain as well as reports of numbness in his hands and legs. Tr. 1125.

In February 2014, Dan Gummo, licensed professional counselor ("LPC"), QMHP, administered a mental health evaluation to Ruth. Tr. 1162–66. Ruth presented with a "history of placement and mental health difficulty." Tr. 1164. Ruth self-reported that "he has torn shoulders and 'shattered both of his hands'" and that as a child "he was struck on the head multiple times and may have undiagnosed traumatic brain injury." Tr. 1162. Ruth reported that he had "hurt others in the last year . . . used a weapon to threaten or in a fight and started physical fights." Tr. 1165. LPC Gummo diagnosed post-traumatic stress disorder, attention deficit hyperactivity

---

[6] Ruth's briefing mistakenly characterizes Ruth returning to the hospital a second time after calling the crisis line on December 5, 2012. *See* Pl.'s Op. Br. at 7. It is clear from the record, however, that although Dr. Procknow signed the treatment notes on December 5, 2012, the events therein occurred during the November 2012 visit. *See* Tr. 1117–20.

disorder, cannabis abuse, anti-social personality disorder, borderline intellectual functioning, and

a GAF score of 50. Tr. 1165

In July 2014, Bob Yuanwen, M.D., wrote a three sentence letter, which read:

> Due to Mr Ruth's medical condition, it is medically necessary for
> him to use a cane or walker when walking. His condition has also
> made him unavailable to work at this time.
>
> Please contact our office if you have any questions or concerns.

Tr. 1183.[7]

## II.    The Administrative Hearing

On July 15, 2014, the ALJ held a hearing, at which plaintiff testified and was represented

by counsel; a vocational expert ("VE") also testified. Tr. 45–82. The ALJ found that Ruth

"possessed [no] past relevant work experience" and asked the VE to:

> assume an individual with the same age, education, and work
> experience as [Ruth,] but who is further limited to no more than
> frequent overhead reaching and frequent bilateral grasping, gripping,
> handling, and fingering. Please also assume that this individual
> would be limited to simple, repetitive, routine tasks requiring no
> more than occasional interaction with supervisors, coworkers, and
> the general public. . . .would [such a person] be capable of
> performing any [] jobs that exist in significant numbers in the
> national and regional economy?

Tr. 75. The VE answered in the affirmative and that such an individual would be able to perform

the jobs of store clerk, material handler, and general helper. Tr. 75–76.

On August 25, 2014, the ALJ issued a decision finding Ruth not disabled within the

meaning of the Act. Tr. 20–31. The decision became the final decision of the Commissioner on

---

[7] Plaintiff submitted this letter to the Appeals Council, who subsequently considered it,
making it part of the administrative record this Court reviews. *See Brewes v. Comm'r of Soc. Sec.
Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Notably, Ruth directs the Court to no other
instances in the administrative record discussing Dr. Yuanwen or his treating relationship with
Ruth.

March 15, 2016, when the Appeals Council denied Ruth's subsequent request for review. Tr. 1–4; *see, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). Ruth now appeals to this Court for review of the Commissioner's final decision.

## SUMMARY OF ALJ FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found that Ruth had not engaged in substantial gainful activity at any time during the period since his alleged onset date of February 28, 2010. Tr. 22.

At step two, the ALJ found that Ruth had the following severe impairments: mild cervical and lumbar degenerative disc disease; mild to moderate bilateral carpal tunnel symdrome; attention deficit hyperactivity disorder; antisocial personality disorder; posttraumatic stress disorder; and borderline intellectual functioning. Tr. 22–23.

At step three, the ALJ found that Ruth's impairments, considered either individually or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23; 20 C.F.R. § 404, Subpt P, App. 1. Tr. 23.

Because he did not establish disability at step three, the ALJ continued to evaluate how Ruth's impairments affected his ability to work. The ALJ resolved that Ruth had the residual functional capacity ("RFC") to perform less than medium work with the following limitations:

> [Ruth] is limited to no more than frequent overhead reaching and frequent bilateral grasping, gripping, handling, fingering and feeling. [Ruth] is also limited to simple, repetive, routine tasks requiring no more than occasional interaction with supervisors, co-workers and the general public.

Tr. 25. At step four, the ALJ found that Ruth had no past relevant work. Tr. 30.

At step five, the ALJ found, in light of Ruth's age, education, intermittent work experience, and RFC, that there were jobs existing in significant numbers in the national economy that he

could perform. Tr. 30.

## ANALYSIS

Ruth argues that: (1) the ALJ erred in not considering consider the full longitudinal medical record as to his mental impairments; (2) the Appeals Council erred in not incorporating post-decision medical evidence into the administrative record; and (3) the ALJ erred in failing to account for deficits in concentration, persistence, and pace in the RFC posed to the VE.

### I. The ALJ's Consideration of the Medical Evidence

Ruth asserts that the ALJ failed to consider the longitudinal medical record of his mental impairments. Pl.'s Op. Br. at 10. Specifically, Ruth argues, this case is analogous to *Watkins v. Commissioner*, No. 3:14-cv-01753-HZ, 2016 WL 184425 (D. Or. Jan. 15, 2016). In *Watkins*, the ALJ assigned "little weight" to a psychological evaluation conducted by a psychiatrist and a teacher's report, both of which predated the claimant's alleged onset date. *Id.* at *3. The ALJ justified his rejection on the basis that the reports did "not reflect [the claimant's] functioning level during the relevant period." *Id.* Judge Hernandez disagreed and rejected that rationale, citing the obligation imposed by the regulations "to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation[s]" when assessing mental impairments. *Id.* (citing 20 C.F.R. § 404.1520a)(c)(1)). Ruth argues the ALJ here effectively rejected evidence of his mental impairments by ignoring records from prior to the onset date.

The Commissioner responds correctly noting that an ALJ "need not discuss *all* evidence presented" to her; rather, an ALJ need only discuss why "significant probative evidence has been rejected." Def.'s Br. at 2 (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)) (emphasis added); *see also Hassen v. Astrue*, No. 3:08-cv-0742-PK, 2009 WL

9081690, at *2 (D. Or. Dec. 11, 2009) ("ALJs are not required to discuss all the evidence presented.") (citation omitted). The Commissioner argues *Watkins* is distinguishable because the ALJ's error in that case arose when the ALJ explicitly "rejected evidence from before [Watkins'] alleged onset of disability and provided insufficient reasons for doing so," and here the ALJ did not reject any similar evidence. Def.'s Br. at 3.

The Commissioner is correct. The regulations require that an ALJ "assess [a claimant's] residual functional capacity based on all of the relevant medical evidence" in the record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Here, the ALJ crafted his RFC "[a]fter careful[ly] consider[ing] the entire record" before him. Reviewing courts presume that ALJs "know the law and apply it in making their decisions." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 n.3 (9th Cir. 2010). The Court declines Ruth's invitation to infer the ALJ wholly ignored evidence merely because he did not discuss it—much of it significantly pre-dating the alleged onset date. The ALJ's weighing of the medical evidence is supported by substantial evidence.[8]

## II. New Evidence Submitted to the Appeals Council

Plaintiff argues the Court should review additional medical evidence submitted to, but not formally considered by the Appeals Council. Pl.'s Op. Br. at 13–16. The additional evidence consists of a psychological evaluation administered by Katherine Greene Psy.D., in November

---

[8] Even if the Court were to find the ALJ erred in this respect, any error was harmless because the evidence that Ruth directs the Court to, not only predates the alleged onset date, but its contents consists of much the same evidence discussed in the medical evidence the ALJ relied on heavily in crafting Ruth's RFC. *See, e.g.,* Tr. 1076 (2012 evaluation reporting a "history of mental health counseling for anger management issues during adolescence"); Tr. 1077 (2012 evaluation reporting abusive childhood); Tr. 1083 (2011 evaluation discussing admission to psychiatric hospital as a young adolescent).

2014. *Id.*, Ex. A-1–7. The Appeals Council reviewed the new submission, but elected not to *consider* the evidence; thus, the evaluation was not included in the Administrative Record:

> We also *looked at* the Intellectual and Learning Disability Evaluation from Katherine Greene, Psy.D.
>
> \*\*\*
>
> The Administrative Law Judge decided your case through August 25, 2014. This new information is about a later time. Therefore it does not affect the decision about whether you were disabled beginning on or before August 25, 2014.

Tr. 2 (emphasis added).

Ruth characterizes the Appeals Council's "look[ing] at" the new evidence as "finding," and argues that "Dr. Greene's evaluation relates to the time period in question." Pl.'s Op. Br. at 13. This Court lacks jurisdiction to review decisions of the Appeals Council. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) ("We have held that we do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.") (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011)). The Social Security Act permits judicial review of the agency's "final decision." 42 U.S.C. § 405(g). The Appeals Council's denial of a request for review is not a final decision; rather, such denial renders the ALJ's decision as the "final decision" of the Commissioner. *Sims v. Apfel,* 530 U.S. 103, 107 (2000); 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff's reliance on *Brewes* is unavailing. In *Brewes*, "the Appeals Council accepted [the claimant's] proffered new evidence and made it part of the record . . . ." *Brewes,* 682 F.3d at 1163. In doing so, the Appeals Council then *considered* the new evidence as mandated by the regulations because it related to the relevant time period and determined the evidence did not

Page 16 - OPINION AND ORDER

provide a basis for changing the ALJ's decision. *Id.*; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

Here by contrast, the Appeals Council did not *consider* Dr. Greene's evaluation. *See* Tr. 2. "Consider" is a term of art in the context of the Appeals Council's denial of request for review. *See Linden v. Colvin*, No. 3:16-cv-05308-DWC, 2017 WL 275364, at *9 (W.D. Wash. Jan. 20, 2017). The Notice of Appeals Council Action uses the terms *consider* and *look at* in distinctly different ways. Some new evidence was formally *considered*. Tr. 2 (the Appeals Council explicitly "*considered* . . . the additional evidence listed on the enclosed Order of Appeals Council") (emphasis added). That new evidence was identified and incorporated into the administrative record. Tr. 5. In contrast, the Council only *looked at* Dr. Greene's evaluation and noted that it concerned a later period in time than Ruth's disability application. Tr. 2. *See Underwood v. Colvin*, 2015 WL 5521991, at *4–5 (D. Or. Sept. 10, 2015) (holding that new evidence that the Appeals Council *looked at* and then rejected did not become part of the administrative record).[9] In doing so, the Appeals Council conducted a threshold evaluation to determine whether the evidence was relevant, but did not *consider* the additional evidence on the

---

[9] Other district courts throughout the Ninth Circuit have reached the same conclusion regarding evidence submitted to the Appeals Council but not explicitly considered or made part of the record. *See, e.g., Neuhauser v. Colvin*, 2015 WL 5081132, at *3 (W.D. Wash. Aug. 27, 2015) ("In contrast to *Brewes*, the Appeals Council in this case did not accept [the claimant's] proffered new evidence and make it part of the administrative record. Although the Appeals Council looked at [the evidence], the Appeals Council did not consider the evidence . . . ."); *Stephenson v. Colvin*, 2014 WL 4162380, at *10-11 (C.D. Cal. Aug. 20, 2014) (holding that new evidence did not become part of the administrative record when the Appeals Council "looked at" the evidence but then rejected the evidence because the Appeals Council "reasonably concluded that such evidence 'is about a later time'"); *Winland v. Colvin*, 2014 WL 4187212, at *2 (W.D. Wash. July 25, 2014) ("Although the Appeals Council looked at this new evidence, it did not consider [the evidence] . . . . For this reason, [the evidence] was not made part of the administrative record, which this Court must consider in determining whether or not the Commissioner's decision is supported by substantial evidence.").

merits. Thus, the new evidence submitted to the Appeals Council that was only *looked at* was not incorporated into the record because it did not relate to Ruth's disability claim and, therefore, is not subject to review by this Court.[10] *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) ("If new material evidence is submitted, the Appeals Council shall consider the additional evidence *only where it relates to the period on or before the date of the administrative law judge hearing decision.*") (Emphasis added.)

Plaintiff's reliance on *Taylor v. Comm'r* is similarly misplaced. 659 F.3d 1228 (9th Cir. 2011). In *Taylor*, the Appeals council failed to acknowledge—at all—new evidence submitted to the Appeals Council in support of the claimant's request for review and the evidence was inadvertently included in the administrative record. *Id.* at 1232–33. Ruth attempts to analogize *Taylor* to this case and states that, like the claimant in *Taylor*, he is "not asking the Court that '[his] request for review' by the Appeals Council be reversed. Rather, Ruth 'asks [the Court] to review the evidence submitted to the Appeals council [because] that evidence was improperly rejected by

---

[10] Ruth's contention that not including Dr. Greene's report in the administrative record violated 42 U.S.C. §405(g) fails because the Appeals Council did not *consider* the evidence. *See Brewes*, 682 F.3d at 1162. Ruth's argument that "[n]owhere in the statute or regulations does the law give the Appeals Council permission to refuse evidence which is properly submitted to it" lacks merit. The plain language of the 20 C.F.R. §§ 404.970(b), 416.1470(b) limits the Appeals Council to accepting evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." Ruth's argument that "the Appeals Council [use] of simplistic date-stamp-of-the-document formula to determine Dr. Greene's evaluation did not 'affect the decision about whether [Ruth] was disabled beginning on or before" the ALJ's decision is also unavailing. The primary guidance provided by 20 C.F.R. §§ 404.970(b) and 416.1470(b) directs the Appeals Council to only *consider* the evidence "relat[ing] to the time period" at issue. The fact that the Notice of Appeals Council Action included dates of records submitted does not constitute error. Tr. 2. Finally, the Court notes that the Commissioner amended 20 C.F.R. §§ 404.970(b), 416.1470(b) in January 2017; however, the language quoted herein includes the language in place at the time of Ruth's requested judicial review.

the Appeals Council.'" Pl.'s Op. Br. at 14 (quoting *Taylor*, 659 F.3d at 1231–32) (some bracketing in original).

Ruth misreads *Taylor*. In asking the Court to find the Appeals Council improperly rejected Dr. Greene's psychological evaluation, Ruth is effectively asking the Court to modify the Appeals Council's decision to *look at* rather than *consider* the report. Again, the Appeals Council need only consider evidence where it relates to the period of alleged disability. 20 C.F.R. §§ 404.970(b), 416.1470(b). Thus, in *Taylor*, it was the Appeals Council's total failure to acknowledge the new evidence in accordance with the relevant regulations—*i.e.*, neglecting to either *look at* or *consider* the new evidence—that made remanding appropriate "so that the ALJ [could] reconsider its decision in light of the additional evidence." *Taylor*, 659 F.3d at 1233.

Ruth's inclusion in his reply brief of a 37 page appellate brief written by his attorney in another case, and his reliance on a non-binding, non-precedential Ninth Circuit memorandum disposition resulting from that appeal, *Warzecha v. Berryhill*, 692 F.App'x 859 (9th Cir. 2017), is unpersuasive. Indeed, the *Warzecha* Court—in affirming the district court's opinion, declining to review post-hearing evidence not *considered* by the Appeals Council—made clear that where "evidence [does] not relate to the period on or before the ALJ's decision, the Appeals Council [is] not required to consider it." *Id.* at *860 (citing *Brewes*, 682 F.3d at 1162).

Ruth's argument that the Appeals Council's failure to include Dr. Greene's report violated the Commissioner's Hearings and Appeals Litigation Manual ("HALLEX") lacks merit. "HALLEX . . . does not "carry the force of law and [is] not binding upon the agency. *Parra v. Astrue,* 481 F.3d 742, 749 (9th Cir. 2007). "Therefore, we do not 'review allegations of non-compliance with [its] provisions.'" *Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) (internal citation omitted).

Ruth's reliance on *Ramirez v. Shalala*, in arguing for a Sentence Four remand rather than Sentence Six, also fails. 8 F.3d 1449 (9th Cir. 1993). In *Ramirez*, the Appeals Council considered "the case on the merits; examining the entire record, including the additional material" and concluded the ALJ's decision was "proper and that the additional material failed to provide a basis for changing the hearing decision." *Id.* at 1452 (quotation marks omitted). In *Ramirez*, however, the Commissioner did not contest the Appeals Council's review of the additional evidence; nor did the Commissioner contest the Ninth Circuit examining the additional material on appeal. *Id.* In contrast here, the Commissioner has made no such concession. In other words, where there is no dispute about whether the evidence should have been considered by the Appeals Council, only then may a district court review the new evidence not made part of the administrative record. *Cf. Will v. Colvin*, No. 3:14-cv-0754-JE, 2016 WL 3450842, at *9 (D. Or. May 18, 2016), *report and recommendation adopted*, No. 3:14-cv-0754-JE, 2016 WL 3457017 (D. Or. June 20, 2016); *see also Brewes*, 682 F.3d at 1162.

Finally, Ruth's additional argument also lacks merit. The appropriate method for this Court to review evidence submitted to—but not "considered" by—the Appeals Council is through Sentence Six of 42 U.S.C. § 405(g). District Courts within the Ninth Circuit use Sentence Six remands "as the proper vehicle for addressing an Appeals Council's improper belief that a medical opinion concerned a time before the ALJ's decision." *Knipe v. Colvin*, 2015 WL 9480026, at *6 n.7 (D. Or. Dec. 29, 2015); *see also Rocha v. Astrue*, 2012 WL 748260, at *4 (D. Ariz. Mar. 7, 2012) ("The Appeals Council stated that they looked at the [new evidence] . . . . The Government is correct, that the Appeals Council did not 'consider' this evidence. Accordingly, this Court considers this evidence under the lens of 42 U.S.C. § 405(g), sentence six."). Under Sentence Six, a court may remand a case "upon a showing that there is new evidence which is material and that

there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."[11] 42 U.S.C. § 405(g); *See Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Here, however, Ruth did not request relief under Sentence Six. Indeed, Ruth specifically argued that sentence six remand would be inappropriate here.

In sum, the Appeals Council properly evaluated the new post-decision evidence it considered and appropriately incorporated into the administrative record the relevant evidence that related to Ruth's disability claim and properly excluded evidence that did not relate to the period on or before the ALJ's decision. *See Brewes*, 682 F.3d at 1163; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

### III. Incorporating the Medical Opinion Evidence into the RFC

Ruth asserts the ALJ erred by not accounting for Dr. Shield's finding of "moderate-to-severe" limitations in persistence and pace directly in his RFC. The Commissioner correctly notes that the "ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Here, Dr. Shields made the following findings regarding Ruth's limitations regarding persistence and pace:

> Persistence and pace are expected to be moderately-to severely impaired secondary to maladaptive personality features, cannabis dependence, intermittent binge drinking, ADHD, and anger management issues.

---

[11] To the extent Ruth argues the evidence was relevant to the time period in question, that argument would have been appropriate under a Sentence Six remand. However, even assuming *arguendo* that the new evidence met the requisite standards, Ruth put forth no justifications demonstrating good cause for his delay in producing the evidence and failed to show that he could not have obtained the information earlier. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985) (finding no "good cause" where claimant submitted medical report prepared after hearing, but gave no reason for not soliciting the information sooner).

Tr. 1080. The Commissioner argues that the ALJ adequately translated those findings into an RFC that limited Ruth to "simple tasks that were also repetitive and routine." Def.'s Br. at 9.

Although not argued by Ruth, whether language in an RFC limiting a claimant to simple, repetitive, or routine tasks adequately addresses a medical finding of deficits in concentration, persistence, and pace is a nuanced analysis in the Ninth Circuit. *Compare Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) *with Brink v. Comm'r of the Soc. Sec. Admin.*, 343 F.App'x 211, 212 (9th Cir. 2009) (mem.) *and Lubin v. Comm'r of Soc. Sec.*, 507 F.App'x 709, 712 (9th Cir. 2013) (mem.).[12]

In *Stubbs-Danielson*, the claimant's physician identified her as having "slow pace, both in thinking [and] actions"; however, the physician also opined she was still able to "carry-out simple tasks." 539 F.3d at 1173. The ALJ "translated" the physician's conclusions regarding the claimant's pace and mental limitations into her RFC by limiting her to "simple tasks." *Id.* at 1174. The court noted that in "translating" the physician's conclusion, the ALJ relied on "the only concrete restriction" available to the him: the limitation to "simple tasks." *Id.* The court then held the ALJ's assessment as to the claimant's concentration, persistence, and pace was adequately incorporated into her RFC because the "assessment [was] consistent with restrictions identified in the medical testimony." *Id.*

In *Brink*, the ALJ accepted that the claimant had moderate restrictions as to concentration, persistence, and pace, but did not include those specific limitations in her hypothetical to the VE. 343 F.App'x at 212. Instead, the ALJ's hypothetical referenced only a restriction to "simple,

_____

[12] Although *Brink and Lubin* are unpublished decisions by the Ninth Circuit, and are not binding, they may be indicative of how the court would rule in a published opinion. *Saucedo v. Colvin*, No. 6:12-cv-02289-AC, 2014 WL 4631225, at *17 (D. Or. Sept. 15, 2014).

repetitive work." *Id.* The court found this restriction did not adequately capture the claimant's limitations because the "repetitive, assembly-line work" addressed by the VE still might require "extensive focus and speed." *Id.* The court distinguished *Stubbs-Danielson*, noting in *Stubbs-Danielson* the medical testimony had not established *specific* restrictions as to concentration and persistence. *Id.* In *Brink*, moreover, when the VE was pressed as to whether a claimant with "attention and concentration deficits would be able to perform [the repetitive assembly line work the VE previously described] the vocational expert responded in the negative." *Id.*

The facts of this case are more analogous to those of *Stubbs-Danielson*. Similar to *Stubbs-Danielson*, the medical opinion relied upon by the ALJ here indicated that Ruth retained the ability to understand, remember, and carry out "short simple instructions." Tr. 1080. The ALJ "translated" that conclusion into Ruth's RFC in the form of "simple, repetitive, [and] routine tasks." In doing so, the ALJ relied upon the only concrete limitation available to him: Ruth's limitation to understand, remember, and carry out "short simple instructions." Moreover, in contrast to *Brink*, in response to a question from Ruth's attorney about whether the jobs described by the VE required "a level of persistence and pace that [the VE] could quantify" the VE testified: "No. . . these jobs do not require what we might call a production pace." Tr. 80.

Ruth directs the Court to *Marsh v. Colvin*, and argues this case must be remanded. 792 F.3d 1170, 1173 (9th Cir. 2015). *Marsh* is inapposite. In *Marsh*, the Ninth Circuit found an ALJ's *total omission* of any discussion of the claimant's treating physician in her opinion was harmful error. Rather, here, the ALJ's decision dedicated four separate paragraphs to discussing Dr. Shields's diagnosis and evaluations. The ALJ then translated the limitations outlined therein into Ruth's RFC. *See Rounds*, 807 F.3d at 1006.

Ruth's reliance on *Widmark v. Barnhart* fails for the same reason. 454 F.3d 1063 (9th Cir. 2006). In *Widmark*, the ALJ erroneously rejected an examining physician's opinion that the claimant had limitations in his ability to do fine manipulation because of a thumb injury. *Id.* at 1066–67. The rejection of the physician's opinion in Widmark was explicit and unequivocal. Whereas here, the ALJ discussed Dr. Shields's opinion at length; and the ALJ appeared to give the opinion substantial weight, translating the limitations outlined therein into Ruth's RFC. *See Rounds*, 807 F.3d at 1006.[13]

Finally, Ruth does not set forth any argument regarding what further RFC restrictions are allegedly necessary to account for this impairment. *See* Pl.'s Op. Br. at 19–20. In any event, the Court finds that the ALJ reasonably translated Dr. Shields concrete limitation into Ruth's RFC appropriately accounting for deficits in concentration, persistence, and pace. *Stubbs–Danielson*, 539 F.3d 1174; *see also Davis v. Colvin*, No. 3:13-cv-00443-PK, 2014 WL 2611346, at *10 (D. Or. June 11, 2014) (upholding step-five finding where ALJ translated claimant's "limitation in concentration, persistence, and pace into the only concrete restriction . . . outlined in the accepted medical evidence). The ALJ's RFC and step-five finding are affirmed.

///

///

///

///

///

---

[13] Ruth's citation to *Stout v. Commissioner* is similarly misplaced. Pl.'s Op. Br. at 20 (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)). In *Stout*, the Ninth Circuit found harmful an ALJ's failure to discuss uncontradicted lay witness testimony. *Stout*, 454 F.3d at 1056. Again, here, the ALJ discusses at length Dr. Shields's medical findings. Tr. 27.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision denying Ruth's application for DIB and SSI is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 26th day of October, 2017.

Honorable Paul Papak
United States Magistrate Judge